# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TIMOTHY STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-1652 (ABJ) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff, Timothy States, brought this suit against the District of Columbia alleging that he was denied due process in violation of the Fifth Amendment of the Constitution when he was denied the opportunity to participate as a party in a zoning proceeding concerning the construction of a building behind his property. Compl. [Dkt. # 1] at 1; *id.* ¶¶ 11–12, 22. Plaintiff contends that the Board of Zoning Adjustment ("BZA" or "Board") fails to provide residents with "specific, direct, and clear notice regarding their rights to request and secure 'party status'" in proceedings to challenge proposed zoning variances. *Id.* at 1. Party status gives affected residents the "right to: (1) legal counsel; (2) present evidence; and (3) cross-examine witnesses." *Id.* at 2. Without party status plaintiff contends that residents are "relegate[d] . . . to a limited three (3) minute presentation." *Id.* ¶ 7. Plaintiff's complaint consists of three counts: Count I – "Defendant's Violation of Plaintiff's Procedural Due Process Rights" – alleges that the letter plaintiff received notifying him of the hearing was defective in that it failed to specify when a party status application would be due. *Id.* ¶¶ 25–28. Count II – "Declaratory Relief" – seeks an order declaring the notices defective for failing to clearly notify residents of the party status application deadline, *id.* ¶¶ 29–30; and Count III requests unspecified "Equitable Relief." *Id.* ¶¶ 31–34. Plaintiff also asks the

Court to award him attorneys' fees, and notwithstanding his characterization of the action as an equitable one, his "Prayer for Relief" also seeks "compensatory damages for emotional damages in excess of $100,000.00." Compl. at 9.

While the complaint filed on July 13, 2018 purported to seek not only a permanent injunction, but also a temporary restraining order ("TRO") and a preliminary injunction, Compl. at 9, plaintiff did not file a motion for either at that time, and defendant filed a timely motion to dismiss on August 6, 2018. Def.'s Mot. to Dismiss Pl.'s Compl. [Dkt. # 5] ("Mot. to Dismiss"). Defendant argued that the Court lacks subject matter jurisdiction to consider the merits of a challenge to the local zoning board's decisions, and that the due process claim fails on the merits. Mem. of P. & A. in Supp. of Mot. to Dismiss [Dkt. # 5-1] ("Def.'s Mem.") at 4–18. Plaintiff opposes the motion, Pl.'s Opp. to Mot. to Dismiss [Dkt. # 8] ("Pl.'s Opp.") at 1, and the matter is ripe for decision. *See also* Def.'s Reply in Supp. of Mot. to Dismiss [Dkt. # 10] ("Def.'s Reply").

Five months after the case was filed, after the close of business on Friday, December 14, 2018, plaintiff decided it was time to file a motion for a TRO, and he claimed that he would suffer imminent irreparable harm absent interim relief. Mem. of P. & A. in Supp. of Pl.'s Mot. for TRO & Prelim. Inj. [Dkt. # 11] ("TRO Mot. I") at 16–17. But the motion identified no impending harm that was not set forth in the original complaint; plaintiff asserted that the deprivation of due process itself was the irreparable harm. *Id.* at 17.

The Court held a scheduling conference on December 18, 2018, and counsel for the plaintiff – who objected to being asked questions about his own allegations concerning irreparable harm during what had been denoted as a "scheduling conference" – informed the Court for the first time that the variance had been issued in July and that construction could begin. After further discussion and with the parties' consent, the Court consolidated the TRO motion with the merits

under Federal Rule of Civil Procedure 65 given the complete overlap of the issues involved. The Court informed the parties that it had the motion under advisement, and that it acknowledged plaintiff's interest in expedition.

Then, on the afternoon of Friday, December 28, 2018, plaintiff purported to withdraw the first motion for preliminary injunctive relief, *see* Notice of Withdrawal of Mot. [Dkt. # 13], and he moved for another TRO. Mem. of P. & A. in Supp. of Pl.'s Mot. for TRO & Prelim. Inj. [Dkt. # 14] ("TRO Mot. II"). He again asked the Court to enjoin the BZA from issuing any variances concerning the property notwithstanding the fact that the variance had already been issued. *Id.* at 1 ("Plaintiff seeks to enjoin [BZA] from granting any variances to the developer herein, pursuant to the BZA's 2018 hearing on BZA Application No. 19768, and its subsequent favorable consideration thereof."). At the conclusion of the pleading, though, plaintiff indicated that he was seeking broader relief:

> Plaintiff urges this Court to grant [his] motion for temporary restraining order and a preliminary injunction, to wit, to restrict Defendant's grant of variances to the Developer herein, essentially to overturn the BZA's decision, until such time that it grants Plaintiff party status, reopen the subject hearing on the Developer's variance application, BZA Application No. 19768, develop a full and complete record, and otherwise preserve all of Plaintiff's constitutional protections on a matter that will greatly affect Plaintiff's property rights.

*Id.* at 22.

After review of plaintiff's submission, the Court concluded once again that the appropriate course of action would be to consolidate the motion with the merits of the case, noting that plaintiff's showing of irreparable harm remained quite thin and that his request to "enjoin the issuance of the variance is now moot." Order [Dkt. # 16] at 3–4.

For the reasons that follow, the Court finds that it lacks jurisdiction to consider plaintiff's objections to the zoning Board's decisions and that plaintiff's due process claim fails under Federal Rule of Civil Procedure 12(b)(6).

## FACTUAL BACKGROUND

Plaintiff is a homeowner whose property is located at 948 S Street N.W., Washington, D.C., 20001. Compl. ¶ 11. On May 14, 2018, he received a notice from the BZA informing him that a developer had applied for several zoning variances to build a condominium in the vacant lot behind his home. *Id.* ¶¶ 6, 12. According to plaintiff, the proposed development, which will stand five feet taller than his two-story home, will "significantly obstruct [p]laintiff's light, air, and space, thereby affecting [p]laintiff's enjoyment of his property and its value." *Id.* ¶13.

The May 14 letter notice informed plaintiff that the BZA planned to hold a public hearing on June 27, 2018 at 9:30 a.m. on the developer's zoning variance application No. 19768. Ex. 1 to Pl.'s Praecipe [Dkt. # 15-1] ("Notice") at 1. The notice listed four proposed zoning variances relating to minimum parking requirements, lot occupancy requirements, rear yard requirements, and side yard requirements, and it explained that District of Columbia regulations require parties seeking zoning relief appear before the BZA in a public hearing "to make their case." *Id.* The letter also noted that the regulations require that the BZA notify "property owners within 200 feet of the subject property" of the public hearing, and it included instructions on "How to Familiarize Yourself with the Case" by accessing the online case record. *Id.*

Importantly, the notice also included a section titled "How to Participate in the Case:"

> There are many different ways to participate in a case, including submitting a letter in support or opposition into the record, participating in person as a witness, or filing for party status. Visit the Interactive Zoning Information System (IZIS) on our website at https://app.dcoz.dc.gov/Login.aspx to make a submission. Visit http://dcoz.dc.gov/resources/Party_Person /index .shtm for an explanation of the difference between a "person" and a "party".

*Id.* at 2.

The second website directs the reader to a sixteen-page "tutorial" on "[w]hat is the difference between party status and testifying as a person?" *See* D.C. Office of Zoning, "Tutorial-Party vs. Person," Jan. 12, 2017, https://dcoz.dc.gov/node/1211526 ("Party Status Tutorial"). The tutorial explains that a party "is a participant in a proceeding who has an interest in the outcome that is greater than that of the general public," *id.* at 3, and is thus granted the right to present witnesses, cross-examine witnesses, file motions, seek reconsideration or rehearing after issuance of the final order, and receive a copy of filings and decisions in the case. *Id.* at 9–11.

By contrast, according to the information the District provides on the internet, "a person is an individual, partnership, association, corporation, public agency, or other legal entity," who "may submit testimony into the record or testify at a hearing, but they do not have the rights of a party." *Id.* at 4. "Anyone can submit a signed letter in support or opposition into the record, as long as the record is still open," *id.* at 6, and "anyone can appear and give oral testimony in support or opposition to a case." *Id.* "[A] person may also file an appeal (or petition for review) with the Court of Appeals, if they can show they have been aggrieved by the decision," *id.* at 4, meaning "it is not necessary to be a party in order to appeal the outcome of the case." *Id.* at 3.[1]

Except for the applicant seeking the zoning variance and the Advisory Neighborhood Commission covering the subject property, party status is not a matter of right. *Id.* at 7–8. While anyone can apply for it, ultimately "becoming a party is subject to the approval by the BZA or [Zoning Commission]." *Id.* at 7. Individuals interested in applying for party status must fill out "Form 140," *id.* at 15, and the tutorial warns that "in order for the BZA or [Zoning Commission]

---

1    The record is silent on whether plaintiff has appealed the BZA decision.

to entertain your request for party status, you must submit Form 140 to [the Zoning Office] at **least 14 days** before the hearing." *Id.* (emphasis in the original).

Plaintiff did not file an application within that time period. He states that about nine days before the public hearing, he "re-read the BZA's two-page notice letter and then accessed the link referenced within, which directed him to complete Form 140." Compl. ¶ 15. According to plaintiff, just as he was about to electronically submit his party status application, he "came across the 14-day party status deadline." *Id.* He alleges that "as a result of the BZA's failure to include a specific and prominent notice of the significant 14-day party status application deadline" in the original letter, his application was filed six days late. *Id.* ¶ 16.

On June 20, 2018, counsel for plaintiff wrote to the BZA to state that he had been retained, and that "by this correspondence," plaintiff was "requesting leave to be identified as a party" in the upcoming hearing. Ex. 4 to Compl. [Dkt. # 1-1] at 1. Counsel explained that "prior to the immediate representation, Mr. States did not dutifully grasp the 14-day notice provision indicated on the Form 140, because that deadline was in a 'separate and distinct document,'" and not expressly mentioned in the notice itself. *Id.*

At the scheduled June 27, 2018 public hearing, plaintiff and his counsel were permitted to argue in support of the request for a waiver of the party status application deadline and to be granted party status. Ex. A to Def.'s Reply [Dkt. # 10-1] ("Tr.") at 68–99. Plaintiff detailed his objections to the project and its anticipated impact on his property, and he explained that he had been aware of the planned project since April 2018 and that he had lodged objections at prior proceedings along the way, including the Office of Planning, the Historic Preservation and Review Board, and the Advisory Neighborhood Commission ("ANC") meeting at which the ANC decided

to support the project.[2]  *Id.* 70–79.  Counsel was also invited to speak and among other things he advanced an argument that since the BZA letter did not place plaintiff on notice as due process required, the late filing should be excused.  *Id.* at 84–87.

> Mr. TEMPLE:  We were not making the point that there was per se no notice of the hearing.  We were making the point that there was no notice of the 14-day period of time for party status and the actual written communication.  And that particular notice comes when you refer to the website that's listed on page 2 of 3 on how to participate in the case.  And that's the point that we were making regarding the indirect notice.

*Id.* at 92.

The developer opposed plaintiff's request, arguing that plaintiff failed to show good cause for missing the deadline and that waiving the deadline would unfairly delay the project.  Tr. at 79–80, 90.  After an extensive discussion with the parties, the BZA panel concluded that plaintiff had not shown good cause to waive the deadline, and it denied his party status application.  *Id.* at 99.

Once the party status issue was addressed, the hearing proceeded to the merits of the developer's zoning variance application.  Plaintiff was given an opportunity testify as a "person" in opposition to the variance.  Tr. 120–26; *see* Party Status Tutorial at 4.  The Board also heard testimony from Dr. Nea Maloo, an architect plaintiff consulted and whom he asked to testify at the hearing.  *Id.* at 127–34.  Although Dr. Maloo was not formally designated as an expert witness, she provided her professional opinion about the possible negative impacts to plaintiff's property, and she was allowed to pose technical questions about the development to a representative from the Office of Planning who was present at the hearing.  *Id.* 131–34.

Shortly after the public hearing, on July 13, 2018, plaintiff filed this suit alleging that his due process rights had been violated.  *See generally* Compl.  A few days later, on July 18, 2018,

---

2       The BZA ultimately accorded "great weight" to the Office of Planning and ANC reports in the record.  Notice of Order Issued by Board [Dkt. # 12-1] ("BZA Order") at 3.

the Board issued a Summary Order granting the four zoning variances sought by the developer. BZA Order at 1. The Order lists the parties and agencies that submitted favorable reports and statements in support of the developer's application for the zoning variances, including the Office of Planning ("OP"), the District Department of Transportation ("DDOT"), the Fire Protection division within the Department of Consumer and Regulatory Affairs ("DCRA"), the Historic Preservation and Review Board ("HPRB"), and the ANC. *Id.* at 1–2. The Summary Order notes that at the public hearing, the Board took up as a preliminary matter plaintiff's "Request to Waive the filing deadline" for party status on the ground that he "did not dutifully grasp" the fourteen-day deadline, and that it ultimately declined to grant this relief. *Id.* at 2. Nonetheless, the Summary Order states that plaintiff was "granted leave to testify as a person in opposition," and that an architect designated by plaintiff also testified in opposition to the zoning variances. *Id.* The Summary Order also reflects that plaintiff submitted written comments that were received as part of the record. *Id.*

## STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts

alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the Court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), vacated on other grounds, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*,

the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679, citing *Twombly*, 550 U.S. at 556.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

Plaintiff asserts that defendant violated his procedural due process rights under the Constitution by issuing a notice letter that "is vague as applied and overbroad" and fails to provide sufficient notice to affected residents of the means of securing party status and the time sensitive nature of any application. Compl. ¶¶ 25–28. He asks the Court to declare BZA's notice letter to be defective and its interpretation and enforcement of party status in his case to be invalid. *Id.* ¶¶

29–30. He claims that "the government's actions have caused [p]laintiff considerable time, resources, anguish and emotional harm, and potentially irreversible harm to his residence." *Id.* ¶ 24. The complaint includes a claim for equitable relief:

> Defendant's actual, including but not limited to its, defective notice letter has substantially and irreparably harmed Plaintiff's property unit by denying him party status at said June 27, 2018, hearing. The government's actions effectively terminated Mr. States' limited participation in the BZA hearing.

*Id.* ¶ 32.

In its motion to dismiss, defendant argues that to the extent plaintiff challenges defendant's decision to deny him party status – or any other decision related to the issuance of the variances – the Court does not have subject matter jurisdiction to review the Board's decisions. Def.'s Mem. at 5. It also submits that plaintiff does not have standing to bring this case, *id.* at 4–11, and that plaintiff has failed to state a procedural due process claim. *Id.* at 11–18.

Federal courts cannot address the merits of a case until jurisdiction – the power to decide – is established. *Hancock v. Urban Outfitters*, 830 F.3d 511, 513 (D.C. Cir. 2016). Accordingly, the Court will first consider defendant's motion to dismiss for lack of subject matter jurisdiction, then turn to defendant's motion to dismiss any remaining claims.

## I. The Court does not have subject matter jurisdiction to review defendant's administrative decision to deny plaintiff party status.

Plaintiff seeks declaratory and equitable relief based on BZA's denial of his request for party status. Compl. ¶¶ 30, 32 ("Plaintiff seeks a declaratory judgment regarding the District's interpretation and enforcement of 'party status' in BZA Application No. 19768," which "substantially and irreparably harmed Plaintiff's property unit by denying him party status"); TRO Mot. II at 22 ("Plaintiff urges this Court to grant its motion for temporary restraining order and a preliminary injunction, to wit, to restrict [d]efendant's grant of variances to the Developer herein, essentially to overturn the BZA's decision, until such time it grants [p]laintiff party status. . . .").

To the extent plaintiff seeks review of BZA's decision to deny him party status, or the variances themselves, the Court holds that it does not have subject matter jurisdiction to review administrative decisions of the BZA.

The District of Columbia Administrative Procedure Act, D.C. Code § 2–501 *et seq.* ("D.C. APA"), much like the federal Administrative Procedure Act, 5 U.S.C. § 551 *et. seq*., establishes certain procedural requirements that D.C. agencies must follow in carrying out their administrative duties. *See, e.g.,* D.C. Code § 2-205 (setting forth rulemaking procedures). The D.C. APA also provides for judicial review of administrative actions, and it requires that challenges to actions by D.C. agencies be brought in the District of Columbia Court of Appeals:

> Any person suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of the Mayor or an agency in a contested case, is entitled to a judicial review thereof in accordance with this subchapter *upon filing in the District of Columbia Court of Appeals a written petition for review*.

D.C. Code Ann. § 2-510(a) (emphasis added).

In *Lightfoot v. District of Columbia*, the D.C. Circuit explained that "the [D.C. APA's] judicial review provision places exclusive jurisdiction in the D.C. Court of Appeals to review District agency action." 448 F.3d 392, 399 (D.C. Cir. 2006) (per curiam) (noting that a federal district court hearing a section 1983 due process suit does not have authority to "act[ ] in something of a supervisory capacity" over a District agency's actions), citing *Fair Care Found. v. Dep't of Ins. and Sec. Reg*., 716 A.2d 987, 997 (D.C. 1998). The Circuit Court remanded the case to the district court to "reconsider[] its decision to exercise supplemental jurisdiction over" a claim challenging the administrative action of a D.C. agency. *Lightfoot*, 448 F.3d at 399; *see also Classic Cab, Inc. v. District of Columbia*, 288 F. Supp. 3d 218, 230 (D.D.C. 2018) (advising that plaintiffs may "wish to voluntarily dismiss their D.C. APA claim in this action and bring it in the District of Columbia's local courts – most likely, the D.C. Court of Appeals, which under D.C. law has

exclusive jurisdiction over challenges to the District's administrative actions"); *Kingman Park Civic Ass'n v. Gray*, 956 F. Supp. 2d 230, 252 (D.D.C. 2013) ("Even if this Court has jurisdiction over the Plaintiff's claim that the construction . . . violates D.C. zoning laws, the United States Court of Appeals for the District of Columbia Circuit discourages courts in this District from exercising supplemental jurisdiction over claims challenging administrative decisions by the District of Columbia.").

Given the judicial review provision of the D.C. APA and the D.C. Circuit's binding determination that the provision gives the D.C. Court of Appeals "exclusive jurisdiction" to review District agency actions, *Lightfoot*, 448 F.3d at 399, the Court holds that it does not have subject matter jurisdiction to review the merits of the BZA's discretionary decision to deny plaintiff's late-filed request for party status or to address the merits of the issuance of the variances. D.C. Code § 2-510; *see also District of Columbia v. L.G. Indus., Inc.*, 758 A.2d 950, 954 (D.C. 2000) (stating that the D.C. APA vests with D.C. Court of Appeals with "[e]xclusive jurisdiction" to review BZA interpretations of the District's zoning regulations).[3] This leaves only plaintiff's due process claim.

## II.     Plaintiff has standing to bring his claim for a violation of his due process rights.

Defendant next argues that the Court does not have jurisdiction because plaintiff does not have standing to bring his due process claim. Def.'s Mem. at 4–11. "To state a case or controversy under Article III, a plaintiff must establish standing." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011), citing *Allen v. Wright*, 468 U.S. 737, 751 (1984); *see also Lujan*, 504

---

3     Even if the Court has subject matter jurisdiction to review the BZA decision, given the Court's dismissal under Rule 12(b)(6) of plaintiff's procedural due process claim, the Court would decline to exercise supplemental jurisdiction over it. 18 U.S.C. § 1367(c)(3); *Lightfoot*, 448 F.3d at 399.

U.S. at 560. Standing is a necessary predicate to any exercise of federal jurisdiction; if it is lacking, then the dispute is not a proper case or controversy under Article III, and federal courts have no subject matter jurisdiction to decide the case. *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012). The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan*, 504 U.S. at 561.

To establish constitutional standing, plaintiff must show that (1) he has suffered an "injury in fact," (2) the injury is "fairly . . . trace[able] to the challenged action of the defendant," and (3) it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560–61 (citations omitted); *see also Friends of the Earth, Inc.*, 528 U.S. at 180–81. Defendant argues that plaintiff here cannot establish the first and third of these requirements. Def.'s Mem. at 5–11. The Court disagrees.

### A.    Plaintiff alleges an injury-in-fact.

"A party who would complain that agency action has violated the Constitution . . . must be adversely affected by that action." *Capital Legal Found. v. Commodity Credit Corp.*, 711 F.2d 253, 258 (D.C. Cir. 1983). To allege an injury-in-fact, plaintiff must show that he has "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), quoting *Lujan*, 504 U.S. at 560.

Defendant argues that plaintiff has failed to allege an injury-in-fact because he has not alleged an actual harm. Def.'s Mem. at 5–8. It cites D.C. zoning regulations that grant party status automatically only to applicants seeking a variance and to Advisory Neighborhood Commissions, *Id*. at 6, citing D.C. Mun. Regs. tit. 11-Y, §§ 403.5, 404.1 (2019), but require anyone else to "clearly demonstrate" interests that "would likely be more significantly, distinctively, or uniquely affected in character or kind by the proposed zoning action than those of other persons in the

general public." *Id.*, quoting D.C. Mun. Regs. tit. 11-Y, § 404.13 (2019). But whether plaintiff was automatically entitled to party status under the D.C. regulations – as opposed to having the ability to apply for and obtain party status based on the location of his property and the proposed variances' effect on it, *see* D.C. Mun. Regs. tit. 11-Y, § 404.1 – does not determine whether he has standing to challenge the process that he was afforded. The question is whether plaintiff set forth facts in his complaint sufficient to allege the invasion of a legally protected interest that is concrete and particularized and actual or imminent. *Spokeo*, 136 S. Ct. at 1548.

Accepting plaintiff's factual allegations as true and granting him the benefit of all inferences that can be derived from them, as it must, *Sparrow*, 216 F.3d at 1113, the Court holds that plaintiff has set forth facts sufficient to allege an injury-in-fact. First, he alleges that his property is directly adjacent to the property that is the subject of the variance that the BZA considered and granted and that the use and enjoyment of the property would be affected by the proposed construction. Compl. ¶¶ 12–13. Further, he alleges that as a result of the BZA's insufficient notice letter, he submitted his application for party status late and was denied the opportunity to participate as a party in the variance hearing for that reason. *Id.* ¶¶ 16–20. Thus, plaintiff has alleged that he had a legally protected interest in participating in the hearing as fully as possible, *see* D.C. Mun. Regs. tit. 11-Y, § 404, and that BZA's flawed notice deprived him of that right.

Defendant cites *Summers v. Earth Island Institute*, 555 U.S. 488, 496–97 (2009), for the proposition that the denial of the "ability to file comments" concerning an agency action is insufficient injury to satisfy Article III standing requirements. But that is not what the Court held in *Summers*. It held that the "deprivation of a procedural right *without some concrete interest that is affected by the deprivation* – a procedural right *in vacuo* – is insufficient to create Article III

standing." 555 U.S. at 496–97 (emphasis added).  Here, plaintiff asserts a deprivation of the procedural right to have adequate notice of BZA deadlines to file for party status, and that this deprivation harmed his real interest as an adjacent property owner in the matter at issue before the agency.  This is enough to satisfy the injury-in-fact requirement for Article III standing.

**B.**    **Plaintiff's alleged injury would be redressable by a favorable ruling by this Court.**

Defendant next argues that plaintiff's alleged injury would not be redressed by a ruling from this Court in his favor.  Def.'s Mem. at 10–11.  It points out that the BZA's decision to grant the requested variances, in and of itself, will not bring about the construction that plaintiff claims will harm his interests.  *Id.* at 11. ("The developer must still secure the appropriate permits from DCRA and build the structure, which may or may not ultimately have a tangible effect on plaintiff or his property.").  So according to defendant, the redressability of plaintiff's alleged harm is speculative, at best.  *Id.*

But the redressability requirement does not require that a favorable ruling from the Court will bar the construction at issue in this case.  What plaintiff complains about is the loss of his constitutional right to be heard, and the law of standing simply requires that a favorable ruling would redress the alleged harm to plaintiff's procedural due process rights.  *Sugar Cane Growers Co-op. of Fla. v. Veneman,* 289 F.3d 89, 94–95 (D.C. Cir. 2002) ("A plaintiff who alleges a deprivation of a procedural protection to which he is entitled never has to prove that if he had received the procedure the substantive result would have been altered.  All that is necessary is to show that the procedural step was connected to the substantive result."); *Delaware Riverkeeper Network v. Fed. Energy Regulatory Comm'n,* 243 F. Supp. 3d 141, 151 (D.D.C. 2017), *aff'd*, 895 F.3d 102 (D.C. Cir. 2018) ("Plaintiffs need not allege that FERC would decide not to approve

PennEast or any other pipeline in order to demonstrate redressability; they need only allege, as they do, that the requested relief would redress their procedural injury.").

Defendant quotes *Renal Physicians Association v. U.S. Dep't of Health & Human Services* for the principle that "the requirements of standing demand [plaintiff] 'show that better procedures would have led to a different substantive result.'" Def.'s Mem. at 10, quoting 489 F.3d 1267, 1278 (D.C. Cir. 2007). But the full sentence that defendant excerpts stands for the *opposite* principle: "[I]n a procedural-injury case, a plaintiff need *not* show that better procedures would have led to a different substantive result." 489 F.3d at 1278 (emphasis added). Defendant's incomplete and misleading quotation of the case misstates the law.

Defendant does not dispute that obtaining the variances is a step the developer must satisfy to proceed with the project. *See* Def.'s Mem. at 2; Notice at 1 (stating that the developer "is seeking zoning relief for a project or use that is not allowed as a matter of right for the zoning district"). And the complaint alleges that BZA's letter was insufficient to provide adequate notice of his opportunity to be heard as a party. Compl. ¶¶ 6–16. Since a ruling in plaintiff's favor could redress this alleged harm by declaring the notice to be invalid and ordering BZA to provide plaintiff with constitutionally valid notice, the complaint satisfies the redressability requirement for Article III standing for a procedural due process claim.

However, the fact that the Court has jurisdiction to hear the Constitutional claim does not mean that plaintiff has successfully pled one for purposes of Federal Rule of Civil Procedure 12(b)(6).

## III. Plaintiff fails to state a procedural due process claim.

The Due Process Clause of the Fifth Amendment forbids the government from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected

interest in 'property' or 'liberty.'" *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014), quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 59 (1999). If the answer is yes, then then the Court considers "whether the procedures used by the Government in effecting the deprivation 'comport with due process.'" *Id.* Here, defendant argues that plaintiff has failed to meet both requirements. Def.'s Mem. at 11–18.

Plaintiff asserts that the use and enjoyment of his property will be negatively affected by the proposed development on the lot adjacent to his, which he alleges will obstruct "light, air and space." Pl.'s Opp. at 13. Defendant maintains that plaintiff's concern "amounts to nothing more than a highly speculative injury," and thus he has failed to plead the threshold requirement of a deprivation of a property interest. Def.'s Mem. at 12. Here, even if one assumes that a cognizable property interest was at stake at the BZA hearing on the variances, plaintiff's claim would be dismissed; the Court finds that plaintiff has failed to state a procedural due process claim because he received notice and was given an opportunity to be meaningfully heard. Therefore, the Court need not decide the first issue. *See Lakeshore Broad., Inc. v. F.C.C.*, 199 F.3d 468, 474 (D.C. Cir. 1999) ("assuming for the sake of argument" that plaintiff was deprived of a liberty or property interest and denying due process claim because "public notice was all the process [plaintiff] was due").

"A procedural due process violation occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections." *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009). But what is considered "appropriate" depends on the particular "time, place, and circumstances." *Ralls Corp.*, 758 F.3d at 317, quoting *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 205 (D.C. Cir. 2001). "Beyond the basic requirements of notice and an opportunity to be heard, the

precise requirements of procedural due process are flexible." *English v. District of Columbia*, 717 F.3d 968, 972 (D.C. Cir. 2013).

In *Mathews v. Eldridge*, the Supreme Court establish a three-factor balancing test for assessing what kind of process is due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Ralls Corp.*, 758 F.3d at 317–18, quoting *Mathews*, 424 U.S. 319, 335 (1976).

In *Jones v. Flowers*, 547 U.S. 220, 226 (2006), the Supreme Court further explained that due process simply requires "notice, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 547 U.S. at 226. Defendant maintains that this "is precisely what BZA's May 14, 2018 notice letter accomplishes," Def.'s Mem. at 14, and the Court agrees. The May 14 notice letter, which plaintiff concedes he received, plainly informed residents of the Board's plans to hold a public hearing on June 27, 2018 at 9:30 a.m. regarding the developer's application, and it lists the four proposed zoning variances. Notice at 1. The notice provided ways to access the "case records," *id.*, and it listed the available means to "participate in the case," including, "submitting a letter in support or opposition into the record, participating in person as a witness, or filing for party status." *Id.* at 2. The letter then included a link to a website that contained detailed information about what each alternative, including an application for party status, would entail. *Id.*

The premise of plaintiff's due process claim is that the notice letter is constitutionally deficient because it "fails to properly, directly, and clearly communicate . . . (1) the significance

of the 'party status'; (2) the difference between 'person' and 'party'; and (3) the timeliness of filing a party status request, all of which are pertinent to [p]laintiff's interest in protecting his property and his Fifth Amendment right."  Compl. ¶ 10.  But it is clear that plaintiff would have obtained all of this information had he simply done what the letter directed him to do and visited the websites referred to in the notice under the heading "How to Participate in the Case."  Notice at 2 ("[v]isit http://dcoz.dc.gov/resources/Party_Person/index.shtm for an explanation of the difference between a "person" and a "party").

Plaintiff does not deny that the link was plainly set forth in the letter, and he does not allege that the necessary information was not available there.  He concedes that although he received the letter six weeks in advance, he waited until nine days before the hearing to "re-read" the notice and learn about the party status application deadline.  Compl. ¶ 15.  So plaintiff's own complaint makes clear that one could read the notice and glean all of the necessary information.

Plaintiff insists, however, that the information about party status, including the application deadline, should have been included in the notice itself, and that it was not enough to make the information accessible though the referenced websites.  While that could be seen as an appropriate, and potentially preferable way for the BZA to communicate, the Constitution does not require the agency to employ the best means possible; "the Fifth Amendment 'only requires that a person receive his due process, not every procedural device that he may claim or desire.'"  *Kropat v. FAA*, 162 F.3d 129, 132 (D.C. Cir. 1998), quoting *Johnson v. United States*, 628 F.2d 187, 194 (D.C. Cir. 1980).

In cases where a plaintiff does not deny that he received notice, but simply challenges the sufficiency of the notice, courts consider whether the information plaintiff insists he was entitled to receive was publicly available.  For example, in *City of West Covina v. Perkins*, the Supreme

Court held that the notice plaintiff received when his property was seized was constitutionally sufficient, even if the notice did not mention state-law remedies for retrieving his property, because that information was "published [and] generally available." 525 U.S. 234, 241–42 (1999). The Court took pains to explain that its prior precedent, *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 16–17 (1978), stood for the proposition that "that notice of the procedures for protecting one's property interests may be required when those procedures are arcane and are not set forth in documents accessible to the public, [but] it does not support a general rule that notice of remedies and [administrative] procedures is required." *Id.* at 242; *see also English*, 717 F.3d at 974 (rejecting due process claim because "[a]ll of the applicable requirements" to pursue plaintiff's grievance were "published in local statutes and regulations that are readily available to counsel and to the general public"). As defendant points out, the information about party status and the deadline to apply was publicly available in published regulations, and readily available on D.C. government websites, and moreover, the BZA told plaintiff exactly where it could be found. Def.'s Mem. at 17; *see generally* Notice.

Not only did plaintiff receive adequate notice, he was also given the opportunity to be heard "in a meaningful manner" at the public hearing. *Ralls Corp.*, 758 F.3d. at 318, quoting *Mathews*, 424 U.S. at 333. First, the Board took up plaintiff's application for party status as a preliminary matter. *See* Tr. 68–99. An extensive discussion took place, during which plaintiff and his attorney raised several arguments, including the claim that the notice was constitutionally deficient. *Id.* Vice Chairperson Hart observed:

> [T]he notice that I see actually has today's date on it and the time for the project. And it says, you know, how to participate in the case. It gives you the information. And if you are interested in that, then you find that further information.

*Id.* at 86–87.  The fact plaintiff waited to access that information was not deemed to be good cause to waive the application deadline.  *Id.* at 99.  But that did not end plaintiff's participation in the proceeding.  He was offered an opportunity to be heard at the merits stage of the hearing.  *Id.* at 120–26.  He voiced his objections to the proposed zoning variance and described the effects on his property.  The Board also agreed to hear from the expert plaintiff had brought with him – an architect who was permitted to testify and question the Office of Planning.  *Id.* at 127–34.  In its ruling, the Board made reference to this testimony, and it specifically found that "granting the requested relief will not tend to affect adversely the use of neighboring property."  BZA Order at 3.  Thus, the record reflects that plaintiff had the opportunity to be heard at the hearing, albeit not as a party.

Accordingly, the Court finds that the Board's letter notice and its procedures do not raise a "risk of an erroneous deprivation" of plaintiff's property interest.  *Mathews,* 424 U.S. at 335. The letter informed plaintiff that there are multiple ways to be heard, and if plaintiff wanted to learn more about any of them it directed him to publicly available sources.  Plaintiff's failure to avail himself of that option is not enough to render the notice ineffective.  While the notice letter could be improved by warning residents of the party status deadline, there was no constitutional violation here, particularly given the fact that the information was readily available, and plaintiff was afforded an opportunity to request party status notwithstanding his late application at the hearing.  Most important, plaintiff was heard.  The Board followed the regulations that permit any person to present verbal or written testimony in opposition to the variances, as is reflected in the

hearing transcript and case record.[4]  Plaintiff was entitled to nothing more, and an unfavorable outcome is not the same thing as a procedural due process violation.

As noted earlier, party status is not granted as matter of right, although anyone can apply for it.  Plaintiff applied, and he was rejected.  To the extent plaintiff contests the Board's decision to deny him party status, or the granting of the zoning variances, the Court has already explained that this is not the forum to challenge those decisions.

## CONCLUSION

For the reasons set forth, the Court finds that plaintiff received all of the process he was due, and that the Board's letter notice is constitutionally sufficient.  Accordingly, it will grant defendant's motion to dismiss the case.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  January 23, 2019

---

4      The full case record for BZA application No. 19768 can be found here:
https://app.dcoz.dc.gov/Content/Search/ViewCaseReport.aspx?case_id=19768.